**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**John A. JAGODZINSKI.**

Superior Court of Pennsylvania.

Argued March 4, 1999.

Filed Sept. 14, 1999.

Lisa M. Schlosser, Asst. Dist. Atty., Erie, for the Com., appellant.

Michael R. Cauley, Erie, for appellee.

Before JOHNSON, FORD ELLIOTT, and ORIE MELVIN, JJ.

FORD ELLIOTT, J.:

¶ 1   In this appeal, the Commonwealth alleges trial court error in admitting John Jagodzinski ("Jagodzinski") into the Accelerated Rehabilitative Disposition ("ARD") program over the Commonwealth's objection. Finding trial court error, we are constrained to reverse. The relevant factual and procedural history of this rather novel case follows.

¶ 2   Following his arrest for driving under the influence, Jagodzinski elected to apply for ARD. An applicant for ARD in Erie County must complete an application, which includes the following question:

8. A.   Have you ever been found guilty or pleaded guilty or no contest to any criminal violation of any kind in any court, other than for summary offenses, whether in Pennsylvania or anywhere else? If so, explain giving date, place, charge(s) and disposition.

R.R. at 3a.   He answered the question truthfully by attaching an explanation that in 1992 he was convicted of possession of cocaine, was placed on probation, had his automobile forfeited, and was required to pay significant fines. In 1996, however, his record was sealed pursuant to Ohio statute, which, according to his attorney, was the equivalent of an expungement. (R.R. at 6a, 8a.)

¶ 3   Based on Jagodzinski's answer to this question, Assistant District Attorney Vincent Nudi ("ADA Nudi") advised Jagodzinski's attorney, Michael Cauley, Esq., that Jagodzinski would not be recommended for the ARD program. (R.R. at 9a.) In a subsequent letter denying reconsideration of Jagodzinski's application, ADA Nudi advised Attorney Cauley that the Ohio statute merely sealed, and did not expunge, Jagodzinski's record. (R.R. at 11a–16a.) Jagodzinski then filed a motion to compel admission to the ARD program, and the motion was granted.

¶ 4   It is clear from the foregoing that the District Attorney's decision to deny Jagodzinski admission to ARD was based upon his truthful answer to Question 8 on the application. The trial court found that ADA Nudi abused his discretion when he relied on Jagodzinski's answer to that question, which revealed his sealed Ohio record, because that record was a "prohibited consideration" as that term is used in *Commonwealth v. Benn,* 544 Pa. 144, 675 A.2d 261 (1996) and *Commonwealth v. Lutz,* 508 Pa. 297, 495 A.2d 928 (1985). We find, however, that Question 8 was a permissible area of inquiry, and that the District Attorney's consideration of Jagodzinski's response to that question was not a "prohibited consideration." Our reasons follow.

¶ 5   In *Lutz, supra,* our supreme court held that the district attorney has sole discretion in any criminal case, including drunk driving cases, to move for admission of a defendant into ARD. *Lutz, supra* at 305–06, 495 A.2d at 932, citing Pa.R.Crim.P. 185, Comment, 42 Pa.C.S.A. (amended). As our supreme court continued, "Admission to an ARD program is not a matter of right, but a privilege." *Lutz, supra* at 307, 495 A.2d at 933 (citation omitted). Rejecting the notion that the revised Motor Vehicle Code permits a defendant to move for admission to ARD, the *Lutz* court opined:

[T]he criminal defendant has no right to demand that he be placed on ARD merely because any particular offense is his first. Rather, society, for its own protection, has an interest in carrying out the penalties prescribed by the legislature for drunk driving, except in the cases where even society's representative in the case, the district attorney, acting in conjunction with the court, and subject always to the restrictions set out in [75 Pa.C.S.A.] Section 3731(d) (concerning persons who may not be admitted to ARD) determines that ARD is preferable to conviction because of the strong likelihood that a given criminal

defendant will in fact be rehabilitated by an ARD program.

*Id.*

¶ 6  Nevertheless, as the *Lutz* court observed, the district attorney's discretion is not unfettered, and may be "usefully circumscribed by a requirement of openness[.]" *Id.* at 309, 495 A.2d at 934. District attorneys are thus required openly to specify their reasons for not submitting a particular case to ARD, "and those reasons, while they may be subject to disagreement as to their wisdom, do not amount to an abuse of discretion." *Id.*

¶ 7  Then, reiterating its prior pronouncements, the *Lutz* court observed:

[T]he decision to submit the case for ARD rests in the sound discretion of the district attorney, and absent an abuse of that discretion involving some criteria for admission to ARD wholly, patently and without doubt **unrelated** to the protection of society and/or the likelihood of a person's success in rehabilitation, **such as race, religion or other such obviously prohibited considerations**, the attorney for the Commonwealth must be free to submit a case or not submit it for ARD consideration based on his view of what is most beneficial for society and the offender.

*Id.* at 310, 495 A.2d at 935 (emphasis in original and added) (citations omitted).

¶ 8  As the *Lutz* court's pronouncements clearly indicate, a district attorney may base a decision to grant or deny admission to ARD on any consideration related to the protection of society and the rehabilitation of the defendant. *Id.* Certainly, whether Jagodzinski had ever been found guilty of a criminal violation is relevant to both of those considerations. In keeping with these policy considerations, many counties, including Erie, regard ARD programs as first-time offender programs, finding that a person who has committed subsequent offenses is a continuing risk to society and is a less viable candidate for rehabilitation. (Commonwealth brief at 6, 6 n.3; *Commonwealth v. Belville*, 711 A.2d 510 (Pa.Super.1998).)  One who has been convicted of a crime, whether in this state or elsewhere, cannot reasonably describe him/herself as a first time offender unless the legislature has specifically granted that privilege, as it did under the statute at issue in *Benn, supra.*[1]

¶ 9  Nevertheless, Jagodzinski, relying on *Benn, supra*, argues that his sealed Ohio record constituted a prohibited consideration.  In *Benn*, Benn's record was expunged pursuant to statute following his successful completion of probation without verdict ("PWOV") following a violation of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–101 *et seq.*  That Act requires the prosecuting attorney or the court and the Governor's Council on Drug and Alcohol Abuse to keep a list of persons placed on probation without verdict, " 'which list **may only be used** to determine the eligibility of persons for probation without verdict and the **names on such lists may be used for no other purpose whatsoever.' "**  *Benn, supra* at 147–48, 675 A.2d at 263, quoting 35 P.S. § 780–117(3) (emphasis in *Benn*). The Act further provides that charges be dismissed against a person successfully completing his term of PWOV, and that the record then be expunged.  *Benn, supra* at 147–49, 675 A.2d at 263, citing 35 P.S. §§ 780–117(3), 119(a).  Furthermore, the Act provides that:

(b) **Any expunged record of arrest or prosecution shall not hereafter be regarded as an arrest or prosecution for the purpose of any** statute or regulation or license or **questionnaire** or any civil **or criminal proceeding or any other public or private purpose.**  No person shall be permitted to learn of an expunged arrest or prosecution, or of

---

1.  Even in *Benn, supra*, however, Benn had not been convicted of a crime, but had accepted probation without verdict ("PWOV") rather than going to trial.

the expunction, either directly or indirectly.

*Benn, supra* at 148, 675 A.2d at 263, quoting 35 P.S. § 780–119(b) (emphasis in *Benn*).

■ ¶ 10 Thus, the *Benn* court found that Benn's expunged record was a "prohibited consideration" for purposes of determining eligibility for ARD because a statute expressly prohibited its consideration. *Benn, supra* at 147, 675 A.2d at 263. As a result, the district attorney could not include on its questionnaire a question requiring Benn to reveal his expunged PWOV for drug-dependent first-time offenders. Chief Justice Flaherty, who authored the supreme court's opinions in both *Lutz, supra*, and *Benn, supra*, thus merely carved out a narrow exception in *Benn* to the *Lutz* rule where a statute specifically prohibited release of information. As the *Benn* court observed, however, "In a typical case, it would be proper to take into account an ARD applicant's prior record, veracity, and other characteristics." *Id.* This is such a typical case.

¶ 11 Support for our conclusion is found in *Belville, supra*, a case in which this court recently had an opportunity to discuss both *Lutz, supra*, and *Benn, supra*, and to decide whether *all* expunged records constitute prohibited considerations. In *Belville, supra*, Belville was arrested for DUI in 1987 and placed in ARD. In 1996, she was again arrested for DUI, at which time she had her 1987 arrest expunged and then again applied for ARD.[2] In deciding whether the district attorney properly denied Belville admission to ARD, the *Belville* court addressed the issue whether the fact that Belville's ARD record was expunged changed its status from a proper to a prohibited consideration pursuant to *Benn, supra*, and *Lutz, supra*. Comparing Pennsylvania's ARD expungement statute with the statute at issue in *Benn, supra*, discussed *supra*, the *Belville* court observed that the ARD statute before it, unlike the Controlled Substances statute in *Benn*, did not explicitly prohibit the use of expunged records in questionnaires. The *Belville* court thus opined, "Absent a similar prohibition with respect to expunged ARDs, we find the questioning in the present case does not inquire into an 'obviously prohibited consideration'." *Belville*, 711 A.2d at 513, quoting *Benn, supra* at 147, 675 A.2d at 263. Because the Ohio statute at issue in this case is even more expansive in allowing access to sealed records than the ARD statute at issue in *Belville*, we find this same analysis appropriate in the case before us.

■ ¶ 12 Unlike the statute at issue in *Benn, supra*, which *requires* that PWOV records be expunged, the Ohio statute merely *permits* a defendant to seek to have a record of a first-time *conviction* sealed, subject to certain exceptions and at certain specific times.[3] According to the

---

**2.** The first issue the *Belville* court addressed is not relevant to this case; therefore we omit its discussion.

**3.** We also note the distinction between expunging and sealing a record. Generally, an expunged record is physically destroyed, in files, computers, or other depositories, and therefore no longer exists. A sealed record, in contrast, is merely made inaccessible except by order of court or to certain designated officials; however, the record continues to exist. Black's Law Dictionary 522, 1211 (5 th ed.1979). While recognizing that these terms are sometimes used interchangeably, our reading of the Ohio statute leads to the conclusion that, because access is so broad for

law enforcement officials, sealing is all that is anticipated.

Additionally, although no one has cited to this section, we note that § 2953.55(A) prohibits questioning a person "[i]n any application for employment, license, or any other right or privilege, any appearance as a witness, or any other inquiry," with respect to any record that has been sealed pursuant to § 2953.52. While "any other inquiry" taken out of context could be construed to include questioning with regard to ARD eligibility, we do not believe this section can be interpreted so broadly in view of the expansive access to sealed records permitted under § 2953.32, set forth *supra*. A reading of § 2953.55(B) supports this conclusion. That section prohibits

Ohio statute, "a first offender may apply to the sentencing court if convicted in this state, or to a court of common pleas if convicted in another state or in a federal court, for the sealing of the record of that offender's conviction. . . ." OHIO REV. CODE ANNOTATED § 2953.32(A)(1) (Banks–Baldwin 1997). The statute also permits inspection of sealed records under nine enumerated circumstances:

(D) Inspection of the sealed records included in the order may be made only by the following persons or for the following purposes:

(1) By any law enforcement officer or any prosecutor, or the assistants of the law enforcement officer or prosecutor, to determine whether the nature and character of the offense with which a person is to be charged would be affected by virtue of the person's previously having been convicted of a crime;

(2) By the parole or probation officer of the person who is the subject of the records, for the exclusive use of the officer in supervising the person while the person is on parole or probation and in making inquiries and written reports as requested by the court or adult parole authority;

(3) Upon application by the person who is the subject of the records, by the persons named in that person's application;

(4) By a law enforcement officer who was involved in the case, for use in the officer's defense of a civil action arising out of the officer's involvement in that case;

(5) By any prosecuting attorney or the assistants of the prosecuting attorney to determine a defendant's eligibility to enter a pretrial diversion program established pursuant to section 2935.36 of the Revised Code;

(6) By any law enforcement agency or any authorized employee of a law enforcement agency or by the department of rehabilitation and correction as part of a background investigation of a person who applies for employment with the agency as a law enforcement officer or with the department as a corrections officer;

(7) By any law enforcement agency or any authorized employee of a law enforcement agency, for the purposes set forth in, and in the manner provided in, section 2953.321 of the Revised Code;

(8) By the bureau of criminal identification and investigation or any authorized employee of the bureau for the purpose of providing information to a board or person pursuant to division (F) of section 109.57 of the Revised Code;

(9) By the bureau of criminal identification and investigation or any authorized employee of the bureau for the purpose of performing a criminal history records check on a person to whom a certificate as prescribed in section 109.77 of the Revised Code is to be awarded.

When the nature and character of the offense with which a person is to be charged would be affected by the information, it may be used for the purpose of charging the person with an offense.

*Id.* at § 2953.32(D).[4] While Jagodzinski relies solely on Subsection (D)(5), we find

---

a state employee from releasing any information in a sealed record for "any purpose involving employment, bonding, licensing, or education[,]" but is silent concerning releasing information for purposes of law enforcement or sentencing.

4. According to the Publisher's Note, this section was amended by 1996 H 566, eff. 10/16/96, and 1996 S 1690, eff. 1/27/97; however harmonization is in question. We cite the House bill.

that the statute allows *any* prosecutor, including a Pennsylvania prosecutor, access to the information provided in Question 8 under the provisions of either subsection (D)(1) or the paragraph following subsection (D)(9). We also find the district attorney's questionnaire permissible under subsection (E):

> (E)  In any criminal proceeding, proof of any otherwise admissible prior conviction may be introduced and proved, notwithstanding the fact that for any such prior conviction an order of sealing previously was issued pursuant to sections 2953.31 to 2953.36 of the Revised Code.

*Id.* at 2953.32(E). We therefore find that the district attorney did not rely on a "prohibited consideration" when deciding not to submit Jagodzinski's case to ARD. In fact, we find that the district attorney relied on a statutorily prescribed consideration in making his determination.

▌ ¶ 13  Nevertheless, Jagodzinski also relies on § 2953.32(C)(2) of the Ohio Code for the proposition that Jagodzinski's conviction is to be considered not to have occurred, i.e., expunged. (Appellee's brief at 15.) Our reading of the statute is narrower. The statute provides that the ***proceedings*** shall be considered not to have occurred. In context, the sentence continues:

> The proceedings in the case shall be considered not to have occurred and the conviction . . . of the person who is the subject of the proceedings shall be sealed, *except that upon conviction of a subsequent offense, the sealed record of prior conviction . . . may be considered by the court in determining the sentence or other appropriate disposition* . . . .

We note in addition that while the underlying crime in this case was committed some time in 1992, the 1996 amendments are only applicable to crimes committed after July 1, 1996. Nevertheless, a comparison of this sec-

OHIO REV. CODE ANNOTATED § 2953.32(C)(2) (Banks–Baldwin 1997) (emphasis added). From the foregoing, it is clear that the Ohio legislature expected that records sealed pursuant to § 2953.31 *et seq.* would be considered for sentencing or other appropriate dispositional purposes in the event of a subsequent offense. To argue that the records may be considered for these purposes in Conneaut, Ohio but not in Conneaut Lake, Pennsylvania is effectively to subvert the clear intent of both the Ohio and Pennsylvania legislatures. *See* 18 Pa.C.S.A. § 9122(c) (list of ARD participants who have successfully completed ARD shall be used solely for the purpose of determining subsequent eligibility for such programs and for identifying persons in criminal investigations; information shall be made available to any court or law enforcement agency upon request).

▌ ¶ 14  Finally, we take exception to Jagodzinski's counsel's assertion that Jagodzinski was not legally obliged to provide information regarding his sealed record. (Appellee's brief at 17.) Question 10 on the ARD application provides:

> 10.  By applying for ARD/PWOV and by signing this application I acknowledge, certify and understand each of the following rights and responsibilities:
>
> . . . .
>
> F.  The information I have provided above is true and correct. I understand if I have provided false information on this application, that reason alone is sufficient to refuse this application. In addition, I understand that by providing false information, I can be prosecuted for Offenses including,

tion as it existed after the 1996 amendments with the section as it existed in 1992, both before and after its earlier amendment on July 31, 1992, indicates no meaningful change relevant to this appeal.

but not limited to, perjury, false swearing and/or unsworn falsification to authorities.

R.R. at 4a, 5a.

¶ 15 As the *Belville* court observed, the purpose of a question such as Question 8 in the Erie County questionnaire

is to ensure [that] the prosecution is fully aware of the applicant's rehabilitation history. A truthful response to the question would aid the prosecution in determining whether an applicant likely will benefit from another ARD or whether the public is better protected by denying the applicant access to ARD. Conversely, a dishonest response might in turn result in a decision which will neither rehabilitate the applicant nor protect the public. As the question and its response are rationally related to the objectives sought to be achieved by ARD, we find consideration of the response by the district attorney to have been proper and appropriate.

*Belville*, 711 A.2d at 513.

¶ 16 Like the *Belville* court, we find that the district attorney in this case considered matters that were not prohibited and that were rationally related both to the likelihood of Jagodzinski's rehabilitation and the need to protect the public.

¶ 17 Order reversed. Jurisdiction is relinquished.