2020 PA Super 74

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH MCCABE | : | |
| | : | |
| Appellant | : | No. 48 EDA 2019 |

Appeal from the Judgment of Sentence Entered December 3, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0002684-2016

BEFORE: NICHOLS, J., MURRAY, J., and COLINS, J.*

OPINION BY MURRAY, J.: **FILED MARCH 27, 2020**

In a case of first impression, we address whether Veterans Court is controlled by Chapter 3 of the Rules of Criminal Procedure (Chapter 3), and if not, whether the trial court's failure to conduct an ability to pay hearing violated Appellant's right to due process and equal protection under the United States Constitution. After careful review, and under existing legal authority, we conclude that Veterans Court is not governed by Chapter 3. Likewise, the trial court did not err in failing to conduct an ability to pay hearing prior to imposing restitution. Accordingly, we affirm.

The trial court summarized the relevant background as follows:

> [Appellant] was arrested on April 15, 2016 and charged with Theft By Unlawful Taking and Receiving Stolen Property for stealing a tackle box containing various pieces of precious metals, including gold coins from an acquaintance. On April 24, 2017, before the Honorable Todd D. Eisenberg, [Appellant] entered an

_____

* Retired Senior Judge assigned to the Superior Court.

open guilty plea to the Theft By Unlawful Taking charge, under 18 Pa. C.S. § 3921(a), as a condition of enrolling in the Montgomery County Veterans' Treatment Court Program.

Judge Eisenberg held a restitution hearing on August 14, 2017, at which time the victim, Dr. Thomas V. Mohn, D.D.S., testified as to the contents and value of the coins in his stolen tackle box. Following that hearing, Judge Eisenberg entered an Order on January 2, 2018 ordering [Appellant] to pay restitution in the amount of $34,857.24, as a condition of his sentence. [Appellant] has been paying the monthly restitution amount since the order was entered. NT, 12/3/18, p. 15.

[Appellant] successfully completed the Veterans' Treatment Court Program under the supervision of the Honorable Cheryl L. Austin, who subsequently rendered [Appellant's] sentence on December 3, 2018. At that time [Appellant] was sentenced to a period of two years supervision with the Montgomery County Adult Probation Department. It was further explained to [Appellant] that although his probation period ends within two years, the restitution order stays in effect until it is paid in full. NT, 12/3/18, p. 22. Judge Austin did not make the previously Ordered restitution part of [Appellant's] probation.

Trial Court Opinion, 3/11/19, at 1-2 (footnotes omitted).

On December 12, 2018, Appellant filed a post-sentence motion for reconsideration of sentence which the trial court denied on December 14, 2018. Appellant timely appealed. Both the trial court and Appellant have complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Appellant presents the following three issues (reordered for ease of discussion):

1. Since Veterans Court is controlled by Chapter 3 of the Rules of Criminal Procedure, was it an error of law when the trial court instead acted pursuant to a Veteran's Court Manual that is not in compliance with Chapter 3 of the Rules of Criminal Procedure, ordered restitution pursuant to 18 Pa.C.S. §1106(a) which is not permitted when ordering restitution

pursuant to Chapter 3 of the Rules of Criminal Procedure, and thereafter failed to dismiss all charges against [Appellant] based upon that illegal restitution award?

2. Regardless of whether Chapter 3 of the Rules of Criminal Procedure applies to Veterans Court, was [Appellant] impermissibly denied a dismissal of charges based on his inability to pay full restitution, notwithstanding his successful completion of Veterans Court, in violation of his right to Due Process and Equal Protection under the United States Constitution?

3. Conversely, if Veterans Court is not controlled by Chapter 3 of the Rules of Criminal Procedure, was the Court's refusal to dismiss the charges against [Appellant] in error when that refusal was based upon an illegal order of restitution entered prior to sentencing with no statutory authority for such a restitution order?

Appellant's Brief at 2-3.

In each of his issues, Appellant challenges the restitution component of his sentence. "[A]n order of restitution must be based upon statutory authority." *In re M.W.*, 725 A.2d 729, 731–32 (Pa. 1999). Where an appellant's challenge is directed to the trial court's authority to impose restitution, it implicates the legality of the sentence. *Id.* at 731 n. 4. "If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated." *Commonwealth v. Stevenson*, 850 A.2d 1268, 1271 (Pa. Super. 2004) (*en banc*) (citation omitted).

"Moreover, challenges to an illegal sentence can never be waived and may be reviewed *sua sponte* by this Court." *Commonwealth v. Randal*, 837 A.2d 1211, 1214 (Pa. Super. 2003) (*en banc*) (citation and internal quotation

- 3 -

marks omitted).  In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.  **Commonwealth v. Dixon**, 161 A.3d 949, 951 (Pa. Super. 2017) (citation omitted).

When interpreting a sentencing statute, we are mindful that:

'[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.'  1 Pa.C.S. § 1921(a).  The plain language of the statute is generally the best indicator of legislative intent, and the words of a statute 'shall be construed according to rules of grammar and according to their common and approved usage. . . .'  1 Pa.C.S. § 1903(a).  We generally will look beyond the plain language of the statute only when words are unclear or ambiguous, or the plain meaning would lead to 'a result that is absurd, impossible of execution or unreasonable.'  1 Pa.C.S. § 1922(1); **see also Mercury Trucking, Inc. v. Pa. Pub. Util. Comm'n**, 55 A.3d 1056, 1058 (Pa. 2012).

**Commonwealth v. Hall**, 80 A.3d 1204, 1211 (Pa. 2013).

More than 40 years ago, this Court recognized the rising popularity of diversionary courts, stating:

These various programs differ in terms of their breadth and their ambition.  While a majority of them are comprehensive in scope, others confine their attention to individuals suspected of committing particular crimes.  In short, (diversion) programs share a common background, but have assumed no uniform structure. Nevertheless, the success of these programs has encouraged more and more state and local authorities to initiate and develop . . . programs of their own.

**Commonwealth v. Kindness**, 371 A.2d 1346, 1354 (Pa. Super. 1977) (concurrence in part by Spaeth, J.) (quoting **State v. Leonardis**, 71 N.J. 85, 95, 363 A.2d 321, 326 (1976)).  In Pennsylvania, specifically, programs

known as "Veterans Court"[1] or "problem solving courts" are being implemented at the county level, namely through an accreditation program approved by our Supreme Court on August 1, 2011, and revised May 7, 2015.[2] Lackawanna County established Pennsylvania's first Veterans Treatment Court in October 2009, and Montgomery County established its VTC in April 2011.

> In Montgomery County, Veterans Treatment Court is designed to
>
> enhance public safety and reduce recidivism of criminal defendants who are veterans by connecting them with VA benefits, treatment services and supports and to find appropriate dispositions to their criminal charges by considering the defendant's treatment needs and the seriousness of the offense.
>
>    \*   \*   \*
>
> When the defendant is formally accepted into Veterans Treatment Court, **the defendant must enter a plea to certain agreed-upon charges**.  Thereafter the defendant will proceed through the three phases of engagement identified in the Terms of Participation section therein.
>
> Sentencing may be deferred pending completion of the Veterans Treatment Court program.  Upon successful completion of the Veterans Treatment Court program, **the defendant's charges may be reduced or dropped all together**.

---

[1] Veterans Court is more commonly referred to as "Veterans Treatment Court." We refer to the problem solving court as Veterans Treatment Court or "VTC" throughout this decision.

[2] Pennsylvania currently has an established Supreme Court accreditation program for drug courts, but Veterans Treatment Courts have not yet been accredited by our Supreme Court.

Montgomery County Veterans Treatment Court Policy and Procedure Manual (VTC Manual), at 1-2 (emphasis in original).[3]

VTC is not unlike the pretrial diversionary program known as Accelerated Rehabilitative Disposition (ARD) that is available for offenders of Pennsylvania's drinking and driving laws. The Pennsylvania Supreme Court created ARD in 1972 pursuant to its authority to supervise the lower courts; ARD was designed to resolve cases "by programs and treatments rather than by punishment." *Commonwealth v. Armstrong*, 434 A.2d 1205, 1208 (Pa. 1981).

> These rules, which appear at [Chapter 3], also provide that the defendant must agree to the terms of the ARD, and that after he has completed the program successfully, the charges against him will be dismissed, upon order of court. If he does not complete the ARD successfully, he may be prosecuted for the offense with which he was charged. The district attorney's utilization of ARD is optional under the rules.

*Commonwealth v. Lutz*, 495 A.2d 928, 931 (Pa. 1985). In subsequent decisions, this Court explained that admission into an ARD program "places the criminal proceedings in abeyance," so that a defendant may pursue rehabilitation "without the necessity of trial and conviction," and successful completion of ARD "is not equivalent to a conviction under any circumstance." *Commonwealth v. Brown*, 673 A.2d 975, 979 (Pa. Super. 1996); *accord Commonwealth v. Hoover*, 16 A.3d 1148, 1149-50 (Pa. Super. 2011).

---

[3] https://www.montcopa.org/DocumentCenter/View/740/Veterans-reatment-Court-Policy-and-Procedure-Manual?bidId= (last viewed February 3, 2020).

Here, following Appellant's guilty plea to theft by unlawful taking, the trial court permitted Appellant to enter the Veterans Treatment Court program, and deferred sentencing to Appellant's completion of the program. The trial court outlined the following conditions of Appellant's participation: comply with all local, state and federal laws; make regular appearances in Veterans Treatment Court; keep regular contact with probation; follow through with treatment goals; comply with urine drug and alcohol screens as requested; increase community participation or service; and pay restitution in full. N.T., 4/24/17, at 7-8, Ex. D-2.

Appellant argues that Chapter 3, the statutory authority for ARD, governs all diversionary programs, including Veterans Treatment Court. In particular, Appellant contends that "[p]roblem-solving courts are simply specific types of diversionary courts and [ARD] is merely the term that the Pennsylvania Supreme Court chose to refer to all pre-trial diversionary programs generally." Appellant's Brief at 17. Appellant asserts that because Chapter 3 governs ARD, and because "[t]here are no other rules in the Rules of Criminal Procedure which could possibly control problem-solving courts," Chapter 3 "must control all diversionary programs." *Id.* at 16. On this basis, Appellant claims the trial court erred in failing to conduct an ability to pay hearing before imposing restitution.

After careful review, we disagree with Appellant's interpretation of Chapter 3 and observe that under the plain reading of the statute, "the rules

set forth in [Chapter 3] govern the procedures **with regard to Accelerated Rehabilitative Disposition** in court cases and in summary cases." Pa.R.Crim.P. Ch. 3, explanatory comment (emphasis added). The comment further explains, "The rules in this Chapter provide the procedural framework **for the utilization of Accelerated Rehabilitative Disposition** by the judges of the courts of common pleas in court cases and in summary cases, and by the minor judiciary in summary cases." *Id.* (emphasis added).

Critically, there is no language exists expanding the scope of this Chapter to other diversionary programs or problem solving courts. Inferentially, the omission of other specified diversionary programs reflects the intent to exclude other problem-solving courts, and suggests that they are separate and distinct. As this Court has stated, "when the language of a statute is clear and unambiguous, it must be given effect in accordance with its plain and obvious meaning." *Commonwealth v. Kirwan*, 221 A.3d 196, 200 (Pa. Super. 2019) (citations omitted). Thus, we are not persuaded by Appellant's claim that in the absence of "other rules in the Rules of Criminal Procedure which could possibly control problem-solving courts[,] . . . [Chapter 3] must control all diversionary programs." Appellant's Brief at 16. To expand the scope of Chapter 3 to include all diversionary programs would conflict with the most basic principles surrounding the separation of powers. *See Benson ex rel. Patterson v. Patterson*, 830 A.2d 966, 968 (Pa. 2003) ("[I]t is not the role of the judiciary to legislate changes the legislature has declined to

adopt."); *see also Snyder Bros. Inc. v. Pa. Pub. Util. Comm'n*, 198 A.3d 1056, 1084-85 (Pa. 2018) (Mundy, J. dissenting) ("It is not the role of the judiciary to divine the intentions of the General Assembly when the text of the statute is unambiguous").

Even if there was ambiguity in the language used in Chapter 3, fundamental differences between the programs would militate against a conclusion that VTC is governed by Chapter 3. Notably, while the "decision to submit the case for ARD rests in the sound discretion of the district attorney," *see Lutz*, 495 A.2d at 935, a determination of VTC eligibility rests with the decision making team, which consists of a Veterans Treatment Court Judge, a "court coordinator," the district attorney, public defender/defense counsel, adult probation, U.S. Veterans Affairs (VA), and County VA. *See* VTC Manual, at 4-5. Also, ARD is for first-time offenders only, *see Commonwealth v. Jagodzinski*, 739 A.2d 173, 176 (Pa. Super. 1999); VTC is not.

Moreover, differences in the resolution of ARD and VTC cases militates against a conclusion that Chapter 3 governs VTC. In particular, "after [the defendant] has completed the [ARD] program successfully, the charges against him **will** be dismissed, upon order of court." *Lutz*, 495 A.2d at 931 (emphasis added). Conversely, "[p]articipants completing Veterans Treatment Court **may** have the court consider dismissing or reducing their charges. The determination of these factors will be based on a case-by-case assessment of prior record and nature of the offense(s) by the judge." VTC

Manual, at 8. Ultimately, the differences in the framework between ARD and VTC reflect the intent to separate ARD from other diversionary programs.[4]

Alternatively, in his second claim, Appellant argues that the "failure of the Commonwealth to *nolle pros* all counts and the failure of the trial court to dismiss them simply because [Appellant] is indigent violates the Due Process and the Equal Protection Clauses of the United States Constitution." Appellant's Brief at 23-24. Appellant contends that the trial court made an impermissible distinction between two classes of individuals: those who have the present ability to pay restitution in full within two years, and those who, because of indigency, do not have the ability. *Id.* at 26. He asserts that this impermissible distinction violates the due process and equal protection clauses of the United States Constitution and this Court's pronouncement in *Commonwealth v. Melnyk*, 548 A.2d 266 (Pa. Super. 1988).

In *Melnyk*, this Court held:

[I]n ARD determinations, the district attorney and the court must inquire into the reasons for the petitioner's inability to pay restitution. If the petitioner shows a willingness to make a bona fide effort to pay whole or partial restitution, the State may not deny entrance to the ARD program. If the petitioner has no ability to make restitution despite sufficient bona fide efforts to do so, the State must consider alternative conditions for admittance to and completion of the ARD program. To do otherwise would deprive the petitioner of [his] interest in repaying [his] debt to society without receiving a criminal record simply because, through no fault of [his] own, [he] could not pay restitution. Such

_____

[4] Because we conclude that Chapter 3 does not govern VTC, we do not address Appellant's claim that the trial court erred in awarding restitution pursuant to 18 Pa.C.S.A. § 1106. *See* Appellant's Brief at 19-21.

deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

*Id.* at 272.

"The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly." *Commonwealth v. Albert*, 758 A.2d 1149, 1151 (Pa. 2000). As recognized in *Ross v. Moffitt*, 417 U.S. 600 (1974),

"Due process" emphasizes fairness between the State and the individual dealing with the State, regardless of how other individuals in the same situation may be treated. "Equal protection," on the other hand, emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable.

*Id.* at 608-09.

Instantly, we distinguish *Melnyk*. First, the appellant in *Melnyk* challenged her exclusion from ARD. As discussed above, Veterans Treatment Court, absent authority to the contrary, is not ARD. Further, unlike the appellant in *Melnyk*, Appellant was not denied admission into a diversionary program. Rather, Appellant sought and was granted admission into Veteran's Treatment Court. As part of the VTC program, Appellant — as well as the presiding judge and the court coordinator — signed the "Agreement to Participate in Veteran's Treatment Court, Montgomery County PA" (Agreement), in which Appellant agreed to numerous conditions "to make a plan" that "lets [Appellant] be part of the Montgomery County Veteran's Treatment Court (VTC)." Ex. D-2. Among the conditions, the Agreement

proscribes Appellant from traveling "outside the United States" without "written approval from the visiting country's consulate, and fines, costs, and restitution must be paid in full." *Id.* at ¶ 4. Appellant signed and initialed the Agreement. Under these circumstances, which include Appellant's affirmative acts, we cannot conclude that Appellant was deprived of "fundamental fairness required by the Fourteenth Amendment." *Melnyk*, 548 A.2d at 272.

Further,

In the context of a criminal case, restitution may be imposed either as a direct sentence, 18 Pa.C.S.[A.] § 1106(a), or as a condition of probation, 42 Pa.C.S.[A.] § 9754. When imposed as a sentence, the injury to property or person for which restitution is ordered must directly result from the crime. *See* 18 Pa.C.S.A. § 1106(a); [*Commonwealth v. Harner*, 617 A.2d 702, 704 (Pa. 1992)]. However, when restitution is ordered as a condition of probation, the sentencing court is accorded the latitude to fashion probationary conditions designed to rehabilitate the defendant and provide some measure of redress to the victim. *Harner*, [ ] 617 A.2d at 706. As [the Pennsylvania Supreme Court] stated in *Harner*:

Such sentences are encouraged and give the trial court the flexibility to determine all the direct and indirect damages caused by a defendant and then permit the court to order restitution so that the defendant will understand the egregiousness of his conduct, be deterred from repeating this conduct, and be encouraged to live in a responsible way.

*Harner*, [ ] 617 A.2d at 707; *see also Commonwealth v. Walton*, [ ] 397 A.2d 1179, 1185 ([Pa.] 1979). Thus, the requirement of a nexus between the damage and the offense is relaxed where restitution is ordered as a condition of probation. *See Harner*, [ ] 617 A.2d at 707 & n. 3; *see also* 42 Pa.C.S.[A.] § 9754(c)(8).

*In re M.W.*, 725 A.2d 729, 732 (Pa. 1999) (footnotes omitted).

In this case, the trial court stated that it imposed restitution as part of Appellant's criminal sentence pursuant to Section 1106 of the Crimes Code, which provides:

**(a) General rule.**—Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

**(b) Condition of probation or parole.**—Whenever restitution has been ordered pursuant to subsection (a) and the offender has been placed on probation or parole, his compliance with such order may be made a condition of such probation or parole.

**(c) Mandatory restitution.**—

(1) The court shall order full restitution:

(i) **Regardless of the current financial resources of the defendant**, so as to provide the victim with the fullest compensation for the loss. The court shall not reduce a restitution award by any amount that the victim has received from the Crime Victim's Compensation Board or other governmental agency but shall order the defendant to pay any restitution ordered for loss previously compensated by the board to the Crime Victim's Compensation Fund or other designated account when the claim involves a government agency in addition to or in place of the board. The court shall not reduce a restitution award by any amount that the victim has received from an insurance company but shall order the defendant to pay any restitution ordered for loss previously compensated by an insurance company to the insurance company.

\* \* \*

**(f) Noncompliance with restitution order.--**Whenever the offender shall fail to make restitution as provided in the order of a judge, the probation section or other agent designated by the county commissioners of the county with the approval of the president judge to collect restitution shall notify the court within 20 days of such failure . . . . Upon such notice of failure to make restitution ... the court shall order a hearing to determine if the offender is in contempt of court or has violated his probation or parole.

18 Pa.C.S.A. § 1106(a)–(c), (f) (emphasis added); **see also** N.T., 12/3/18, at 15.

In criminal proceedings, an order of restitution is not simply an award of damages, but is, rather, a sentence. **Commonwealth v. Holmes**, 155 A.3d 69 (Pa. Super. 2017). Section 1106 of the Crimes Code specifies that restitution is **mandatory** and the defendant's financial resources, *i.e.*, his ability to pay, is irrelevant unless and until he defaults on the restitution order. **Commonwealth v. Colon**, 708 A.2d 1279, 1284 (Pa. Super. 1998); **see also** 18 Pa.C.S.A. § 1106. Accordingly, it bears repeating that this Court has no authority to disregard the plain language of the Sentencing Code. 1 Pa.C.S.A. § 1921; **see also Hall**, 80 A.3d at 1211 ("The plain language of the statute is generally the best indicator of legislative intent . . . ."). Appellant's claim - that his ability to pay was not considered – lacks merit because the court was not obligated to consider ability to pay when it entered the order. **Id.**

In his final issue, Appellant contends that the trial court imposed an illegal sentence by ordering restitution prior to sentencing. Appellant's Brief at 21-23. Appellant claims "[t]here is absolutely no authority in the Rules of

Criminal Procedure for a pre-sentence restitution order outside of the context of ARD. If this [C]ourt were to conclude that [Chapter 3] do[es] not apply to diversionary courts, such as Veterans Court, then that would mean that there is no authority whatsoever for [a] pre-sentence restitution order. ***Id.*** at 22.

Section 1106(c)(2) includes "the requirement that if restitution is ordered, the amount must be determined at the time of sentencing . . . ." ***Commonwealth v. Dinoia***, 801 A.2d 1254, 1257 (Pa. Super. 2002) (emphasis omitted).

> It also placed upon the Commonwealth the requirement that it provide the court with its recommendation of the restitution amount **at or prior to the time of sentencing**. Although the statute provides for amendment or modification of restitution "at any time," 18 Pa.C.S.A. § 1106(c)(3), the modification refers to an order "made pursuant to paragraph (2) . . . ." Thus, the statute mandates an initial determination of the amount of restitution at sentencing. This provides the defendant with certainty as to his sentence, and at the same time allows for subsequent modification, if necessary.

***Id.*** (internal citations and footnote omitted, emphasis added); ***see also Commonwealth v. Smith***, 956 A.2d 1029 (Pa. Super. 2008) (*en banc*) (holding court cannot impose generalized, open-ended restitution order at sentencing and then "work out the details" and amounts at later date; order of restitution "to be determined later" is *ipso facto* illegal); ***Commonwealth v. Mariani***, 869 A.2d 484 (Pa. Super. 2005) (explaining Section 1106(c) has two, inextricable components: (1) time at which restitution sentence must be imposed, *i.e.*, at sentencing hearing, and (2) specific nature of such sentence, *i.e.*, definite as to amount and method of payment). A sentence intended to

include restitution, which is entered without a definite amount and a method of payment, is illegal and must be vacated in its entirety. *Id.*; 18 Pa.C.S.A. § 1106.

Here, following Appellant's guilty plea to theft by unlawful taking, the trial court permitted Appellant to enter Veterans Treatment Court, and deferred sentencing until completion of the program. As a condition of VTC, the trial court ordered Appellant to pay restitution consistent with Section 1106. Accordingly, on August 14, 2017, the trial could held a hearing, and on January 2, 2018, entered an order requiring Appellant to pay $34,857.24. If Appellant successfully completed the conditions of VTC, including full payment of restitution, the trial court could exercise its discretion and dismiss Appellant's charges. However, because Appellant failed to do so, on December 3, 2018, the trial court sentenced Appellant to two years of probation.

Appellant's argument – that an order of restitution can only be imposed at sentencing – disregards the unconventional procedural posture of this case, where restitution was imposed prior to sentencing in order for Appellant to satisfy a condition of VTC. Further, the trial court's restitution order comports with Section 1106(c), which requires that the amount of restitution be determined, "regardless of current financial resources." 18 Pa.C.S.A. § 1106(c)(1)(i).

In sum, we conclude, absent clear authority or a contrary directive by our Supreme Court, that Chapter 3 does not govern Veterans Treatment Court. Further, we do not find that the trial court violated Appellant's rights to due process and equal protection, and find **Melnyk** distinguishable in that regard. Finally, the trial court did not impose an illegal sentence by ordering restitution as part of VTC.

For the reasons stated above, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>3/27/2020</u>