J-A14004-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PETER VOUVOUNAS | : | |
| | : | |
| Appellant | : | No. 518 EDA 2024 |

Appeal from the Judgment of Sentence Entered January 8, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007313-2022

BEFORE: PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.: **FILED JULY 22, 2025**

Peter Vouvounas appeals from the judgment of sentence, an aggregate period of 2 to 4 years' confinement followed by 3 years' probation and $10,000 restitution, entered in the Court of Common Pleas of Philadelphia County after a jury convicted him of aggravated assault, ethnic intimidation, simple assault, recklessly endangering another person, and strangulation.[1] After careful review, we affirm in part and vacate and remand in part.

The trial court summarized the facts underlying Appellant's convictions as follows:

The evidence at trial showed [Appellant] assaulted Brian Conner [("Victim")] because of [Victim's] race on July 28, 2022, in

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2710(a), 2701(a), 2705, and 2718(a)(1), respectively.

Philadelphia. The incident took place in the hallway of an apartment building located at 1216 Christian Street. [Victim] lived in the [first-floor] rear unit; [Appellant] the [first-floor] front. Prior to the incident, they had limited interactions—occasional nods and brief exchanges. [Victim] was awakened by knocking around 3:00 AM. He thought his roommate, Thomas Fazio, needed help getting into the building and went to let him in. As [Victim] walked past [Appellant's] apartment, [Victim] was suddenly struck multiple times, fell to the floor, and attempted to shield his face with his arms. He then saw another resident, Diego, attempt to intervene and pull [Appellant] away. As Diego helped [Victim] to his feet, [Appellant] pushed [Victim] against the wall and grabbed him around his neck with both hands. [Victim] gasped for air and lost consciousness.

The commotion awoke Fazio and he got up to investigate. As he emerged from the apartment he shared with [Victim], Fazio saw [Appellant] with both hands around [Victim's] neck, forcing him against the wall. Fazio and Diego pulled [Appellant] away, and [Appellant] retreated to his apartment. As [Victim] and Fazio returned to their apartment, [Appellant] came back out and body-slammed [Victim] against the wall, taking him to the ground. [Victim] was rendered unresponsive after this second assault.

[Appellant] yelled racial slurs, including the "n-word," as he assaulted [Victim], shouting "there are no 'n-words' that live in this building."

Fazio called 911. [Victim's] interaction with the First Responders was captured on body-worn camera. [Victim] stated he had been hit in the head but could not identify the assailant. [Victim] explained at trial he was disoriented and still processing the events at that time.

A few days after the attack, [Victim] encountered [Appellant] again in the hallway. When [Victim] quickly attempted to enter his apartment, [Appellant] caught the door and tried to force his way in. [Victim] managed to close the door. Fear and anxiety drove him at that point to move out.

After relocating, [Victim] spoke with the property manager and learned [Appellant's] name. He then accessed [Appellant's] Facebook page and discovered several posts made the day of the first assault[, and additional posts made in the days that followed

the second incident. Victim took screenshots of the posts which contained racial slurs and other highly offensive, derogatory language.]

\*\*\*

[Appellant] was arrested on September 26, 2022, and charged with aggravated assault, ethnic intimidation, simple assault, recklessly endangering another person, and strangulation[.]

Jury selection began August 14, 2023. During voir dire, the court described the allegations generally. The court advised the venire that [Appellant] had allegedly assaulted [Victim] and had impeded his breathing with malicious intention toward [Victim's] race. A few jurors had heard about the assault. The court then reviewed a few of the questions on the juror questionnaire that most frequently elicited indications of possible bias and identified jurors who required follow up. When the court asked counsel for both parties whether they wanted to ask additional questions, neither attorney did.

The court and counsel then proceeded to individual voir dire. The first qualified juror, Juror No. 2, was a black person. The court asked her questions based on her answers to the juror questionnaire and invited the attorneys to ask questions. Defense counsel asked Juror No. 2. whether she had "ever been the victim of any type of discrimination, anything like that, not necessarily arising to the level of a crime but personally." [N.T. Voir Dire, 8/14/23, at 23.] Juror No. 2 had been called "the N word on the street, [and] just different incidences in school ...." [*Id.*] She advised, however, she could set aside her personal experience and fairly judge the case.

After Juror No. 2 was directed to the hallway, defense counsel exercised a peremptory challenge. The trial judge asked defense counsel his basis because the juror had stated she could be fair and impartial. The court also asked defense counsel if he intended to strike all black people who answered his question affirmatively—that they had experienced discrimination—but who nonetheless believed they could judge the case fairly and impartially. Defense counsel equivocated. He agreed there was no grounds for striking Juror No. 2 for cause and did not assure the court he would not strike all black people who had experienced racism but asserted they could fair and impartial.

- 3 -

The court considered the matter, allowed the peremptory strike of Juror No. 2, but prohibited counsel from asking this line of questions going forward. For the next and all successive juror candidates, the trial judge instead referred to the court's prior description of the case and asked each juror whether the facts would prevent the candidate from being fair and impartial to both sides. The candidates affirmed they could be fair and impartial. Defense counsel did not object to this procedure. Twelve jurors from these were selected.

Trial Court Opinion, 6/11/24, at 1-5. (citations to record, brackets, headings, and unnecessary capitalization omitted).

A trial was held the following day, and the jury found Appellant guilty of all charges. The court held a sentencing hearing on January 8, 2024, at which Victim's mother testified that she and her husband had expended approximately $10,000 following the assault to move Victim to a new apartment where he felt safe and to help him pay rent for two separate apartments. *See* N.T. Sentencing, 1/8/24, 8-10. She also indicated that to fund this expense, she and her husband continued working and postponed retirement. *See id.*, at 10. The court sentenced Appellant to 2 to 4 years' imprisonment followed by 3 years' probation. Additionally, the court, having "construed the parental subsidy as a debt incurred" by Victim, ordered Appellant to pay $10,000 in restitution as "a condition of probation." Trial Court Opinion, 6/11/24, at 6; N.T. Sentencing, 1/8/24, at 44.

Appellant timely-filed a notice of appeal from his judgment of sentence on February 6, 2024. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following questions for our review:

1. Whether the trial court erred and abused its discretion at voir dire by specifically prohibiting the defense from questioning potential jurors whether they had ever been a victim of discrimination, and by generally prohibiting the defense from asking "any questions along those lines," in violation of [Appellant's] Due Process rights and rights to a fair and impartial jury?

2. Whether the sentence of $10,000 restitution is illegal, where the prosecution presented no evidence that a victim suffered personal injury directly resulting from any crime, and the lower court failed to specify the method of payment at the time of sentencing?

Appellant's Brief, at 4 (trial court answers omitted; formatting altered).

In his first issue, Appellant challenges the trial court's decision to limit the scope of voir dire during individual examination.

"[A] trial court's discretion concerning the scope of voir dire must be considered in light of the factual circumstances of a particular criminal episode." ***Commonwealth v. Holt***, 273 A.3d 514, 543 (Pa. 2022) (citations and internal quotation marks omitted).

The scope of voir dire rests within the sound discretion of the trial court, and we will not reverse the court's decisions on voir dire absent a palpable abuse of discretion. The sole purpose of voir dire is the empaneling of a competent, fair, impartial, and unprejudiced jury capable of following the instructions of the trial court. Neither party is permitted to ask direct or hypothetical questions designed to disclose what a juror's present impression or opinion as to what his decision will likely be under certain facts which may be developed in the trial of a case. Voir dire is not to be utilized as a tool for the attorneys to ascertain the effectiveness of potential trial strategies.

*Commonwealth v. Walker*, 305 A.3d 12, 16 (Pa. Super. 2023) (italics, citations, and quotation marks omitted); *see also Holt*, 273 A.3d at 547 (Voir dire "is not intended to provide a defendant with a better basis upon which to utilize his peremptory challenges.") (citation and brackets omitted).

"The decision on whether or not counsel may propose their own questions of potential jurors during voir dire is a matter left solely within the discretion of the trial court." *Commonwealth v. Paolello*, 665 A.2d 439, 451 (Pa. 1995) (citation omitted). A trial court may reject a proposed supplemental question if it finds the inquiry improper or unnecessary. *See Commonwealth v. Ellison*, 902 A.2d 419, 427 (Pa. 2006). "The opportunity to observe the demeanor of the prospective juror and the tenor of the juror's answers is indispensable to the judge in determining whether a fair trial can be had in the community." *Id.* at 424 (citation and internal quotation marks omitted). "A prospective juror's personal views are of no moment unless these opinions are so deeply embedded as to render that person incapable of accepting and applying the law as given by the court." *Holt*, 273 A.3d at 547 (quotation marks and citation omitted).

Appellant avers that the trial court denied him his constitutional right to due process by precluding counsel from asking prospective jurors about their personal experiences with racial prejudice, thereby entitling him to a new trial. *See* Appellant's Brief, at 28. Specifically, Appellant takes issue with the court's decision to limit counsel's presentation of the following question to Juror No.

2, opposed to the entire venire: "Have you ever been the victim of any type of discrimination, anything like that, not necessarily arising to the level of a crime but personally?" N.T. Voir Dire, 8/14/23, at 23.

The Commonwealth contends that Appellant waived this issue by failing to object to the court's rejection of the proposed question. *See* Appellee's Brief, at 8 n.1. The Commonwealth further maintains that the trial court properly concluded counsel's "line of questioning could be used to improperly eliminate black people from the jury." *Id.* at 8. We agree with both contentions.

"[T]he failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue [on appeal]." *Commonwealth v. Houck*, 102 A.3d 443, 451 (Pa. Super. 2014) (citations omitted); Pa.R.A.P. 302(a); *see Commonwealth v. Christian*, 389 A.2d 545, 547 (Pa. Super 1978) ("Appellant made prompt objection to [the court's ruling on the proposed question] and preserved the issue for appellate review."); *see also Commonwealth v. Scott*, 212 A.3d 1094, 1104 (Pa. Super. 2019) (finding waiver of issue on appeal where defense counsel "preferred to ask each individual venireperson the question regarding religious bias" but did not object to court's proposed question). Although "there is no specific requirement under Pennsylvania law that counsel utter the word 'objection' to preserve an issue for appeal[,]" in this case, defense counsel did nothing to preserve a challenge to the court's ruling

on the proposed question during voir dire. ***Commonwealth v. Alexander***, 296 A.3d 1, 5 (Pa. Super. 2023) (citation omitted).

Instantly, when the trial court instructed counsel that he could not ask the remaining prospective jurors whether they had ever been a victim of discrimination, counsel failed to object or respond in any capacity. ***See*** N.T. Voir Dire, 8/14/23, at 30. Accordingly, counsel waived any challenge to the court's decision to reject the proposed question and prevent counsel from presenting it to the rest of the venire during individual examination.

Moreover, in our independent review of the record, we found no indication that the trial court denied Appellant due process by precluding his proffered line of questioning or that the trial court's manner of conducting voir dire was inadequate.

"The Sixth and Fourteenth [Constitutional] Amendments guarantee a defendant the right to, *inter alia*, an impartial jury[.] … Thus, the jury selection process is crucial to the preservation of a criminal defendant's constitutional right to an impartial jury." ***Commonwealth v. Davis***, 273 A.3d 1228, 1239 (Pa. Super. 2022) (internal citations and quotation marks omitted). "[T]he purpose of *voir dire* is solely to ensure the empaneling of a competent, fair, impartial, and unprejudiced jury capable of following the instructions of the trial court." ***Id.*** at 1240-41 (brackets and citation omitted).

Here, the trial court succinctly addressed Appellant's argument as follows:

> [T]he court described to the jury panel the charges against [Appellant] and the alleged facts. During the individual voir dire, defense counsel sought to ask [jurors] specific questions about their life experience with racism. Defense counsel would not assure the court he would not strike all black [jurors] who had experienced racism even if they asserted they could be fair and impartial. The judge thought this line of questions improper under those circumstances. The court instead asked each juror if they recalled the court's description of the case and asked whether there was any reason they could not be fair and impartial. No juror expressed any bias, impartiality, or inability to be fair. Defense counsel did not object to this alternative procedure. This process fell within the bounds of the trial court's lawful discretion.

Trial Court Opinion, 6/11/24, at 10 (citations and unnecessary capitalization omitted). We discern no abuse of discretion.

The trial court's overriding concern that counsel's proposed question would have the effect of striking black jurors from the jury pool was validated by counsel's use of a preemptory challenge to dismiss Juror No. 2, the first and only juror asked to disclose her personal experiences with discrimination, after she explicitly indicated she would be able to set aside her past experiences and fairly judge the case. *See* N.T. Voir Dire, 8/14/23, at 23-24. When the court asked counsel to state his reason for moving to strike Juror No. 2, defense counsel conceded it was "a sad reality" that every prospective black juror who was asked whether they had experienced discrimination would likely answer affirmatively. *Id.* at 29-30. However, counsel would neither confirm nor deny whether he would move to strike black jurors who indicated they had experienced racial discrimination but could nonetheless remain

impartial, and he repeatedly stated his basis for striking Juror No. 2 was her response to the proposed question. *Id.* at 26, 27-29.

Following this exchange, the trial court reasonably determined that the inquiry was improper and presented significant potential for racial discrimination to subvert the jury selection process. As the Supreme Court has explained:

> The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice. Discrimination within the judicial system is most pernicious because it is a stimulant to that race prejudice which is an impediment to securing to black citizens that equal justice which the law aims to secure to all others.

*Batson v. Kentucky*, 476 U.S. 79, 87-88 (1986) (citations, quotation marks, and brackets omitted).

Furthermore, the court conducted voir dire in a manner that sufficiently sought to uncover prejudice, rendering Appellant's proposed question unnecessary. *See Ellison*, 902 A.2d at 427. Prior to individual examination, the court advised the entire venire panel of the nature of the case as follows:

> The charges in this case are aggravated assault; ethnic intimidation; simple assault; recklessly endangering another person and strangulation.
>
> It's alleged that on Thursday, July 28th of 2023 at/or around 1216 Christian Street in the City and County of Philadelphia, [Appellant] assaulted [Victim] with the intent to cause serious bodily injury and in doing so placed the victim in danger of serious bodily injury or death.

It's alleged that during this assault, [Appellant] knowingly or intentionally impeded the breathing or circulation of blood of [Victim] by applying pressure to the throat or neck. It's additionally alleged that this assault was inflicted with malicious intention to the race and/or color of [Victim].

N.T. Voir Dire, 8/14/23, at 15-16; *see Ellison*, 902 A.2d at 427 (finding trial court had sufficient basis to preclude defense counsel from asking specific question regarding nature of the offense during individual examination because court advised prospective jurors during group voir dire that case involved sexual assault). The court then proceeded to examine each prospective juror individually and asked whether they recalled this description of the charges and whether the alleged facts would substantially interfere with or prevent them from being fair and impartial to both sides. *See* N.T. Voir Dire, 8/14/23, at 31. Additionally, the court conducted follow-up inquiries where juror questionnaire responses raised potential concerns, and counsel acquiesced to the examination of every individual who served on the jury. *See* Pa.R.Crim.P. 631(F)(1)(b) ("Challenges shall be exercised immediately after the prospective juror is examined."). Notably, Appellant has neither alleged nor demonstrated that any specific juror lacked the ability to be impartial or required more pointed questioning. *See Ellison*, 902 A.2d at 427.

Accordingly, Appellant's first issue is waived, meritless, and does not entitle him to his requested relief.

In his second issue, Appellant challenges the trial court's order of restitution. *See* Appellant's Brief, at 13. Specifically, Appellant avers the

restitution order of $10,000 is illegal because (1) the Commonwealth failed to establish that Victim suffered personal injury as a direct result of Appellant's offenses and (2) the court failed to specify a method of payment at the sentencing hearing as required by Section 1106(a) of our Criminal Code. *Id.* at 13-14.

"A challenge to the authority of the trial court to impose an order of restitution is a challenge to the legality of sentence[.]" ***Commonwealth v. Royal***, 312 A.3d 317, 325 (Pa. Super. 2024) (citation omitted); ***see Commonwealth v. Weir***, 201 A.3d 163, 172-73 (Pa. Super. 2018) ("[A] challenge to the legality of sentence is presented when the defendant claims that the trial court lacked statutory authority to impose restitution because the Commonwealth failed to establish one or more of the requirements of section 1106(a).") (citations omitted).[2] When presented with a challenge to

_____

[2] We disagree with the Commonwealth's contention that Appellant presents a waivable challenge to the discretionary aspects of sentencing. ***See*** Appellee's Brief, at 13. Here, Appellant does not challenge the amount of restitution imposed. ***See Royal***, 312 A.3d at 325 ("[A] challenge to the **amount** of a restitution award based on the trial court's consideration of the Commonwealth's evidence regarding loss is a challenge to the discretionary aspects of sentence, not the legality of sentence.") (emphasis added; citation omitted). Rather, Appellant challenges the court's restitution order by claiming that the Commonwealth failed to establish a causal connection between the restitution order, Victim's injuries, and Appellant's conduct. ***See*** Appellant's Brief, at 29-30; ***Commonwealth v. Risoldi***, 238 A.3d 434, 461 n.23 (Pa. Super. 2020) ("A challenge to the trial court's authority to impose a sentence of restitution based on its finding that the restitution was a direct result of the criminal conduct is a challenge to the legality of the sentence.") (citation omitted).

the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary. ***See id.***

A sentencing court may impose restitution as a sentence, pursuant to 18 Pa.C.S.A. § 1106, or as a condition of probation, pursuant to 42 Pa.C.S.A. § 9754(b).

> As a direct sentence, restitution is authorized by 18 Pa.C.S.A. § 1106, which mandates that courts shall sentence offenders to make restitution in certain cases of injury to persons or property. ***See*** 18 Pa.C.S.A. § 1106(a). Such restitution is limited to direct victims of the crime and requires a direct nexus between the loss and the amount of restitution.
>
> However, when restitution is imposed as a condition of probation pursuant to [42 Pa.C.S.A. §] 9754, its purpose is to rehabilitate the defendant and provide some redress to the victim. Under section 9754, the sentencing court is given the flexibility to fashion the condition to rehabilitate the defendant. Therefore, the requirement of a nexus between the loss and amount of restitution is relaxed. Notably, restitution imposed under section 9754 also is unique in that it requires a court to explicitly consider a defendant's ability to pay.[3]

***Commonwealth v. Whatley***, 221 A.3d 651, 653-54 (Pa. Super. 2019) (case citations omitted).

"[I]f restitution must be ordered as part of a sentence under Section 1106(a), it cannot at the same time also be ordered merely as a condition

---

[3] "When restitution is ordered under Section 1106(a) and an offender has been placed on probation or parole, restitution also may be ordered as a condition of such probation or parole. 18 Pa.C.S.A. § 1106(b). This restitution, however, is still a condition of an offender's sentence as opposed to a condition of probation under Section 9754[]." ***Commonwealth v. Holmes***, 155 A.3d 69, 87 n.11 (Pa. Super. 2017) (*en banc*).

under Section 9754[].” ***Holmes***, 155 A.3d at 87 (footnote omitted). However, when restitution is imposed under either statute, the court must specify the method of payment at the sentencing hearing. ***See*** 18 Pa.C.S.A. § 1106(c)(2) (“At the time of sentencing the court shall specify the amount and method of restitution.”); ***see Holmes***, 144 A.3d at 86 (Upon ordering restitution as a condition of probation, the court must determine “how the restitution is to be paid.”) (citation omitted). “A sentence intended to include restitution, which is entered without a definite amount and method of payment, is illegal and must be vacated in its entirety.” ***Commonwealth v. McCabe***, 230 A.3d 1199, 1209 (Pa. Super. 2020) (citations omitted). Similarly, “where a sentencing court fails to consider a defendant’s ability to pay prior to imposing restitution as a probationary condition, the order of restitution constitutes an illegal sentence” and must be vacated. ***Whatley***, 221 A.3d at 654 (citation omitted).

Based on our review of the record, it is unclear whether the trial court ordered restitution as a condition of Appellant’s probation or as a mandatory sentence. Although the court analyzed restitution as a mandatory sentence under Section 1106(a) in its 1925(a) opinion, the court clearly stated that restitution was imposed as “a condition of probation” at the sentencing hearing, and it included its directive to pay restitution in the special conditions section of Appellant’s sentencing order, rather than as a separate sentence. ***See*** Trial Court Opinion, 6/11/24, at 11; ***see*** N.T. Sentencing, 1/8/24, at 44; ***see*** Sentencing Order, 1/8/24. Furthermore, as the Commonwealth concedes,

neither a method of payment nor Appellant's ability to pay restitution were determined at the sentencing hearing. *See* Appellee's Brief, at 13-14. Therefore, our ability to review the merits of Appellant's challenge to the legality of restitution based on the Commonwealth's alleged failure to establish a causal connection between Victim's loss and the restitution ordered is impeded by our inability to ascertain the applicable statutory framework. However, the order of restitution is illegal under either Section 1106 or Section 9754 because the court failed to specify a method of payment or determine Appellant's ability to pay. *See McCabe*, 230 A.3d at 1209; *Whatley*, 221 A.3d at 654.

Accordingly, we are constrained to vacate Appellant's judgment of sentence and remand for resentencing. The sentencing court must make an on-the-record determination as to whether restitution is being imposed as a separate sentence, in accordance with 18 Pa.C.S.A. § 1106, or as a condition of probation, in accordance with 42 Pa.C.S.A. § 9754. The court must specify both the amount of restitution and the method of payment at the sentencing hearing, and if the court imposes restitution as a condition of probation pursuant to Section 9754, the court must also consider Appellant's ability to pay.

Judgment of sentence affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>7/22/2025</u>