Circulated 12/26/2023 01:25 PM

J-A19025-23

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSE L. VELAZQUEZ JR., | : | |
| | : | |
| Appellant | : | No. 2325 EDA 2022 |

Appeal from the Judgment of Sentence Entered May 24, 2022
In the Court of Common Pleas of Monroe County
Criminal Division at No:  CP-45-CR-0000339-2019

BEFORE:   BOWES, J., STABILE, J., and PELLEGRINI, J.[*]

OPINION BY STABILE, J.:

Appellant, Jose L. Velazquez Jr., appeals from a judgment of sentence of ten to twenty years' imprisonment for burglary.  Following the verdict and the dismissal and dispersal of the jury, Appellant requested that the court poll the jury.  The trial court called the jurors back into the courtroom, polled them, determined that their verdict was not unanimous, and ordered a mistrial. Several weeks later, the court reversed its order on the ground that Appellant's right to poll the jury expired upon dispersal of the jury.  We hold that the court properly reversed its order granting a mistrial, and we affirm.

Appellant was charged with burglary and other offenses for breaking into the home of Tony Chillemi, the husband of Appellant's girlfriend, and threatening him with a gun.  On March 16, 2022, after a three-day trial, the jury found Appellant guilty and acquitted him of all other offenses.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The trial court summarized the announcement of the verdict and subsequent events as follows:

Announcement of the verdict occurred in the customary fashion without incident. After uneventful deliberations, the jury informed the tipstaves that it had reached a verdict. Counsel and [Appellant] were called to the Courtroom. Also present were the alternates, various court personnel, the Clerk who was to record the verdict, [Appellant]'s family members, Chillemi and White, police officers, and members of the district attorney's office.

When the Court asked the jury if a verdict had been reached, the foreperson answered, "Yes, it has, your honor." The Clerk was asked to retrieve the verdict slip. The slip was inspected by the undersigned. The Court's review showed that the jury's written verdict was [that Appellant was] guilty of Burglary and not guilty on the other seven counts, that the slip was signed by all 12 jurors, and that the foreperson signed a second time.

At the direction of the Court, the Clerk then delivered the slip back to the foreperson. Thereafter, the Clerk orally asked the jury for its findings as to each of the eight counts listed on the verdict slip. Consistent with the written verdict slip, the foreperson answered "guilty" as to Burglary and "not guilty" on all other counts. The Clerk then asked, "Ladies and gentlemen of the jury, harken on to the verdict as the Court has recorded it in the issue between the Commonwealth of Pennsylvania and the [Appellant], Jose Velazquez, Jr., so say you all and are you content?" The Jury responded, "Yes."

After a pause of five seconds or so in which neither attorney spoke, the Court asked if there was, "Anything from the attorneys?" (N.T., 3/16/22, p. 140). A few more seconds passed. (N.T., 4/06/2022 p. 60). Then, the assistant district attorney made an oral motion to revoke [Appellant's] bail. He began articulating reasons for the motion, invoking public safety concerns and reiterating [Appellant's] conduct which the Commonwealth had previously sought to introduce as other acts evidence.

The Court stopped the assistant district attorney, indicating an awareness of the facts and circumstances being recited. The

- 2 -

Court informed the parties that it would address the jury and then return to the motion.

Counsel for [Appellant] did not object to the assistant district attorney's motion or statements and did not avail himself of the opportunities given to make any motion of his own.

The undersigned thanked the jury for their service, informed the jurors that they were now free to discuss the case with anyone, invited the jurors to stay and ask questions or provide feedback if they desired, asked the members to complete the Court's jury service questionnaire, informed all that an escort to the parking facility could be arranged and said, "with that, you're excused."[1] The jurors then dispersed, mingling as they did with others in the courtroom. The police officer who sat at the Commonwealth's table during trial asked the jurors if they would speak with him, as is his practice after every jury trial in which he is involved. He spoke directly with at least one juror.

After a few moments, as jurors were leaving the courtroom, the undersigned stated for the record that the verdict could now be entered and recorded. [Appellant] and the attorneys were told that the Commonwealth's motion would be taken up again after the jurors had the opportunity to leave and the room quieted. The transcript of the proceedings notes dismissal of the jury.

Following a pause, while the Court and parties were waiting for the room to quiet, defense counsel made a comment that the Court interpreted as a request to poll the jury, with regret that polling had not earlier been requested. As a result, we asked the tipstaves to reassemble the jurors in the courtroom, if possible, for polling.

During an exchange with the undersigned that occurred while the tipstaves were attempting to gather the jurors, counsel for [Appellant] raised his voice to the Court for the second time in this case. Counsel was again admonished and told that further outbursts could result in contempt and attendant consequences.

---

[1] The court's opinion does not provide a citation for this statement, but the court accurately quotes what it said. N.T., 3/16/22 at 143.

- 3 -

By the time counsel asked for polling of the jury, only two jurors, possibly three, were still in the courtroom. The others had physically left and were in various stages of exiting the courthouse. Juror No. 8, who had asked for an escort to her car, was with a member of jury management waiting at the front door of the courthouse for the escort and was about to leave the building. Others were working their way out.

After [a] few minutes, the tipstaves were able to round up ten of the jurors. Juror No. 6 was returned shortly thereafter. Then, since the tipstaves were able to catch Juror No. 8 before she exited the courthouse, we waited for that juror to return.

After all jurors were back in the courtroom, we explained that they had been brought back to be polled. The polling called into question whether or not the jurors had fully understood or followed the Court's instructions regarding unanimity as to each count.

At sidebar, Counsel for [Appellant] moved for a mistrial based on what he perceived as the irreversibly prejudicial impact on the jury of the comments made by the assistant district attorney in support of the motion to revoke bail. The assistant district attorney opposed the motion, asking instead for a cautionary instruction that he believed could remedy the matter. Ultimately, for reasons stated on the record, primarily the jury's failure to follow instructions coupled with the fact that it heard the beginning of the Commonwealth's request to revoke bail, we granted [Appellant's] motion and declared a mistrial.

Pa.R.A.P. 1925 Opinion, 12/28/22, at 4-7.

During polling, one juror indicated that the jury did not reach a unanimous verdict "individually." N.T., 3/16/22, at 148. Next, a juror stated that Appellant was guilty of three offenses, even though there had only been a guilty verdict on a single charge (burglary). *Id.* at 151. Another juror stated, "I believe there was a misunderstanding by the jury." *Id.* at 152. Due

- 4 -

to its concerns about jury confusion, the trial court granted Appellant's motion for mistrial. *Id.* at 166.

On March 25, 2022, the Commonwealth filed a motion for reconsideration requesting the court to vacate the mistrial declaration and schedule sentencing on the verdict as announced. The Commonwealth argued that the request to poll the jury was untimely, and that the declaration of a mistrial was a legal nullity because it occurred after the jury had been dismissed. On March 28, 2022, the court issued an order scheduling a hearing on the Commonwealth's motion.

On April 6, 2022, the court convened a hearing during which the court held argument and recounted its recollections of the events at the close of trial. The court granted the Commonwealth's motion for reconsideration and reversed its order granting a mistrial. The court accepted the "verdict orally announced by the jury, confirmed in open court, and set forth in the written verdict slip that has been entered of record as the true and proper verdict in this case." Order, 4/6/22.

The Commonwealth filed a motion to treat Appellant as a "second strike" offender in accordance with 42 Pa.C.S.A. § 9714 due to his previous conviction for aggravated assault. On May 24, 2022, the court sentenced Appellant to ten to twenty years' imprisonment, the mandatory minimum for a second-strike offender and the statutory maximum for burglary. Appellant filed timely

post-sentence motions, which were denied, and a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

The court reasoned in its opinion that the "line of demarcation is the dispersal of the jury." Opinion, 12/28/22, at 12. "[O]nce the jury is announced and recorded, and the jury is discharged and disperses, neither the court nor the jury has any power to change the verdict." *Id.* The court determined that it lacked authority to poll the jury because jury had announced the verdict, had been dismissed, "and, most importantly, [had] dispersed." *Id.* at 13.

Appellant raises two issues in this appeal:

I. Did the trial court abuse its discretion when it reversed its proper granting of a mistrial when the jury was clearly not unanimous?

II. Did the trial court abuse its discretion when it denied [Appellant's] Motion for a New Trial based on evidence hidden by the Commonwealth concerning an officer who had resigned under an internal investigation, which would have been relevant for impeachment purposes?

Appellant's Brief at 5.

In his first argument, Appellant asserts that the trial court abused its discretion by reversing its order granting a mistrial. We disagree. The order granting a mistrial was a legal nullity, because the court lost the authority to poll the jury due to its dispersal.

The Rules of Criminal Procedure provide: "Before a verdict, whether oral or sealed, is recorded, the jury shall be polled at the request of any party. Except where the verdict is sealed, if upon such poll there is no concurrence,

the jury shall be directed to retire for further deliberations." Pa.R.Crim.P. 648(G). The purpose of permitting individual polling is to protect the defendant's right to be convicted by a unanimous jury only, a right protected under both the United States and Pennsylvania Constitutions. *Commonwealth v. Downey*, 732 A.2d 593, 595 (Pa. 1999).

In *Downey*, our Supreme Court construed Pa.R.Crim.P. 1120(f), the predecessor to Rule 648(G), to permit any party to request polling until the jury disperses. The jury in *Downey* announced its verdict finding the defendant guilty of first-degree murder and a firearms charge. The tipstaff handed the verdict to the clerk, who handed it to the judge. The judge stated, "Record the verdict." *Id.*, 732 A.2d at 594. The clerk asked the jury, "[Y]ou find the defendant . . . guilty of murder in the first degree and so say you all?" *Id.* The jury responded, "Yes, we do." *Id.* The jury gave the same response to whether it found the defendant guilty of the firearms charge. At that moment, defense counsel requested that the jury be polled. The court replied, "I'm not going to poll the jury because you waited too long. That's supposed to be done prior to the verdict being recorded." *Id.* The court discharged the jury, and the jurors left the courtroom.

In its Pa.R.A.P. 1925 opinion, the trial court contended that defense counsel's request to poll the jury was untimely under Pa.R.Crim.P. 1120(f), the predecessor to Rule 648(g), because the defendant failed to request polling before the verdict was recorded. The Superior Court reversed and

remanded for a new trial on the ground that the trial court erred by denying the request to poll the jury. The Supreme Court affirmed, reasoning:

> [W]e think it clear that the trial court in the instant matter erred in refusing the request to poll the jury as untimely. Moreover, we find the trial court's reliance on Pa.R.Crim.P. 1120(f) to be misplaced. Rule 1120(f) is merely a codification of the right to poll a jury. The mere use of the terms "is recorded" in Rule 1120(f) cannot be deemed to somehow circumscribe that right. Consistent with our established case law, we understand Rule 1120(f) to require that a trial court entertain a motion to poll the jury **at any time prior to dispersal of that jury**.

*Id.* at 595 (citing *Commonwealth v. Martin*, 109 A.2d 325 (Pa. 1954); *Commonwealth v. Pacini*, 307 A.2d 346 (Pa. Super. 1973)) (emphasis added).

Subsequent to *Downey*, the Supreme Court renumbered Rule 1120 as Rule 648, but the crucial text, Rule 648(g), remains identical to the text in Rule 1120. Accordingly, *Downey* continues to govern our construction of Rule 648(g). *See Commonwealth v. Fuentes*, 272 A.3d 511, 521 (Pa. Super. 2022) ("as an intermediate appellate court, this Court is obligated to follow the precedent set down by our Supreme Court").

In the present case, the record establishes that defense counsel failed to request polling until after the court discharged the jury and most of the jurors left the courtroom. Multiple jurors were in the course of leaving the courthouse. One juror was waiting at the door of the courthouse for an escort to her car. Under *Downey*, defense counsel lost the right to request polling because the jury had already dispersed. As a result, the court's decisions to

call the jury back into the courtroom, poll the jury, and declare a mistrial were nullities.

Appellant insists that defense counsel was denied adequate opportunity to request polling and that he was too surprised by events in the courtroom to make a timely request. The trial court carefully explained, however, that (1) counsel had "ample opportunity" to make this request, and (2) counsel was quite capable of voicing objections, given his aggressive representation of Appellant throughout trial. The court reasoned:

> [S]everal seconds elapsed in-between the time the verdict was orally announced and assented to by the jury and the time the Court asked counsel if they had any requests. That pause provided ample opportunity for [Appellant] to ask that the jury be polled. Likewise, after the Court queried counsel, a similar pause occurred, again giving [Appellant] time and opportunity to request polling. Further, even after the assistant district attorney asked to revoke bail and began stating his reasons, counsel for [Appellant] could have objected or at a minimum signaled or attempted to signal the desire to poll the jury. Clearly, [Appellant] had ample opportunity to request that the jurors be polled. He did not. The request to poll the jury was not made until after the jury was discharged and dispersed, all but two or three had left the [c]ourtroom, and at least some had interacted with non-jurors.
>
> On appeal, [Appellant] may repeat his trial attorney's related assertion that he was shut out or overridden by our immediate recognition of the assistant district attorney, whose request for revocation of bail purportedly stunned him into silence. Any such argument would be disingenuous.
>
> As trial counsel himself stated on the record, he is an experienced criminal defense attorney who has tried many cases in this Court. During the course of these proceedings, trial counsel did not hesitate to lodge objections and file motions. Moreover, he twice interrupted and yelled at, or at least to, the Court when he wanted to assert himself. During trial, he pushed the bounds of civility,

- 9 -

decorum, and ethical representation of a client to their limits by, among other things, seeking to introduce "other acts" or character evidence without following the agreed-upon and court directed rules for introduction of such evidence; using, as the assistant district attorney correctly characterized, a Sesame Street voice during his closing to refer to the victim, the witnesses, and the Commonwealth's attorney; referring during closing to the Commonwealth's DNA expert witness as the "DNA lady" and "Ms. Australia"; calling another Commonwealth witness, Chillemi's girlfriend, "the redhead, the one whose expecting," and "Miss I-passed-out-on-the-couch;" and injecting his beliefs into his closing by stating that "I have a saying. The criminal justice system is criminal and it's not just. That's why I stand on my side of the courtroom." This opinion was followed by the related statement that, "Guys, the criminal justice system, it's criminal. A lot of times, it's not just." These are not the actions of a shrinking violet attorney who was overridden or "stunned" to the degree that he could not have at least indicated a desire to poll the jury. Further, as discussed, the assertion that there was no break or pause in which to make motion is untrue. Simply, trial counsel had the opportunity, experience, and wherewithal to timely ask the jury to be polled, to object to the assistant district attorney's request for revocation of bail and attendant comments, or both. Any suggestion otherwise is specious.

Opinion at 14-15. Since the trial court was present during all relevant events and observed the sequence and timing of all events, we have no reason to disturb its determination that defense counsel had ample opportunity to request polling but simply failed to make a timely request.

In his second argument, Appellant contends that the trial court abused its discretion by denying his post-sentence motion seeking a new trial on the ground that the Commonwealth hid evidence that (1) John Bohrman, the lead investigator in Appellant's case and a witness for the Commonwealth during trial, had resigned due to an internal investigation into his misconduct, and (3) Bohrman's superior, Officer Stephen Mertz, was arrested during the

pendency of this case and later convicted of bribery and obstruction of justice. No relief is due.

Following sentencing, Appellant filed a motion requesting a new trial claiming that the Commonwealth failed to disclose that Bohrman resigned because of an internal investigation into his conduct that led to criminal charges. Appellant admitted that the charges against Bohrman were later withdrawn. Appellant further alleged that Bohrman's superior, Officer Mertz, was convicted during the same trial term as Appellant of bribery and obstruction of justice. Appellant argued that the Commonwealth had the duty to disclose the existence of the investigation under *Brady v. Maryland*, 373 U.S. 83 (1963).

On August 11, 2022, the court convened a hearing on Appellant's post-sentence motion. Defense counsel argued that Officer Bohrman was charged with assaulting his girlfriend and left the police department as a result of this charge. N.T., 8/11/22, at 9. Counsel argued that he should have been able to impeach Officer Bohrman with these facts during his testimony, but the Commonwealth prevented any impeachment by failing to disclose these facts prior to trial. *Id.* Counsel did not present any documentary evidence or call any witness.

At the conclusion of the hearing, the court ruled that evidence of the charge against Officer Bohrman and ensuing investigation would have been inadmissible because the charge did not involve *crimen falsi* or implicate

Officer Bohrman's honesty. *Id.* at 35-37. The court also observed that Officer Mertz did not testify during Appellant's trial, and unlike Officer Bohrman, Officer Mertz did not write any report relating to Appellant. *Id.* at 37. The court entered an order denying Appellant's post-sentence motions.

*Brady* issues present questions of law for which our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Bagnall*, 235 A.3d 1075, 1084 (Pa. 2020). "A *Brady* violation comprises three elements: (1) suppression by the prosecution; (2) exculpatory or impeaching evidence favorable to the defendant, and (3) prejudice to the defendant." *Commonwealth v. Daniels*, 104 A.3d 267, 284 (Pa. Super. 2014).

Here, Appellant failed to present any evidence during the hearing on post-sentence motions. Consequently, the record is devoid of any "exculpatory or impeaching evidence favorable to the defendant." *Id.* Furthermore, defense counsel conceded in his post-sentence motions that the charges against Officer Bohrman were withdrawn, and defense counsel conceded during the post-sentence hearing that the charges did not involve *crimen falsi*. Witnesses can only be impeached with convictions for *crimen falsi*, not with prior arrests for non-*crimen falsi* that have been withdrawn. *Commonwealth v. Chimel*, 889 A.2d 501, 534 (Pa. 2005) ("the veracity of a witness may not be impeached by prior arrests which have not led to convictions"). Finally, Officer Mertz did not testify during Appellant's trial; nor is there evidence that he participated in investigating Appellant's offense.

Therefore, we cannot see how his convictions for bribery and obstruction of justice were exculpatory or impeaching evidence favorable to Appellant.

For these reasons, we hold that the trial court properly denied Appellant's post-sentence motion alleging a ***Brady*** violation.

Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.