J-S05003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
ROBERT FRANCIS ATKINS   :
  :
Appellant   :   No. 1951 EDA 2024

Appeal from the Judgment of Sentence Entered February 2, 2024
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0004730-2022

BEFORE:   BOWES, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:         **FILED APRIL 21, 2025**

Robert Francis Atkins appeals from the judgment of sentence of imprisonment for a term of life plus ten years imposed upon his convictions for first degree murder and arson. We affirm.

This matter stems from the murder of Joy Hibbs in April 1991. The case remained unsolved for thirty years as a result of flawed investigations and unforthcoming witnesses. After a renewed and more fruitful investigation in 2021, the following facts, which we glean from the certified record, came to light and were presented at Appellant's 2024 bench trial.

Ms. Hibbs and her husband regularly purchased marijuana from Appellant. On one occasion, the victim called Appellant to complain about the

_____

[*] Former Justice specially assigned to the Superior Court.

quality of her most recent procurement. Her son, David Hibbs, who was twelve years old at the time, overheard their argument, wherein Appellant yelled: "I will fucking kill you and blow up your house."[1] N.T. Trial, 1/29/24, at 90. Between the time of this call and her murder, there were multiple unsuccessful attempts made to break into the victim's home.

On April 19, 1991, as David returned home from school, he saw his home "engulfed in flames." Trial Court Opinion, 9/13/24, at 2. He tried to enter the house because his mother's car was in the driveway. The billowing smoke prevented him from doing so, but he could see that all four burners of the gas stove were turned on. He yelled for a neighbor to call 911.

During firefighting efforts, Ms. Hibbs was found deceased on the floor of David's bedroom. She was initially believed to have died as a result of the fire, but two days later it was revealed that she had been stabbed multiple times in the neck and abdomen. Some of her stab wounds were up to six inches deep, and her chest appeared to be "stomp[ed]" on. *See* N.T. Trial, 1/30/24, at 95. An autopsy report showed that she died before the fire started because there was no soot inside of her lungs. Dr. Ian Hood, M.D., an expert in forensic pathology, reviewed the autopsy report and opined that "her perineum and crotch [were] basically charred out of existence, which indicated

---

[1] When Appellant became a prime suspect, a neighbor, Sharon Micklas, reported that Appellant threatened to "blow up [her] house and blow up [her] car" six months before the murder over a dispute that some of her tree branches had fallen into his yard. N.T. Trial, 1/30/24, at 40.

that there may have been a fire accelerant poured on her body." Trial Court Opinion, 9/13/24, at 3 (cleaned up). A fire marshal report stated that there were four points of origin where the fires were set, including the mattress in David's bedroom.

That same day, Appellant's wife, April Atkins, awoke to find that her husband was not home. Typically, Ms. Atkins caught up on her sleep during the day after her night shifts while Appellant watched their children. Later, Appellant returned home covered in blood and promptly showered and washed his clothes. Immediately after, he told his wife to gather their kids and pack for an unplanned trip to the Poconos. At 2:15 p.m., Ms. Atkins called her employer to explain that she would not be coming in for her scheduled 3:00 p.m. shift. She described their travel to the Poconos as "the scariest drive you can think of. A lot of speed. It was road rage all the way." N.T. Trial, 1/30/24, at 13.

The morning after they arrived, Appellant was not in the hotel room when Ms. Atkins awoke. Upon his return, he had newspapers and new shoes, and in the afternoon, he disposed of a bag in the woods behind the hotel. They returned home the following day. Ms. Atkins did not report any of these details to police because Appellant "physically, mentally, and verbally abused" her. *Id*. at 23.

Eyewitnesses to the fire reported that a blue Monte Carlo was parked "haphazardly" and in the "wrong direction" outside the victim's home the day

of the crime, and a neighbor heard screaming coming from inside the house. **See** Trial Court Opinion, 9/13/24, at 2. David "recalled an occasion prior to the murder in which . . . Appellant was standing next to a blue Monte Carlo in the driveway and told David it was his new car." **Id**. at 5. Appellant's cousin also provided a picture taken two weeks prior to the killing that displayed Appellant's family with a blue sedan in the background.

Another factor impeding the original investigation was Appellant's status as a confidential informant for the Bristol Township Police Department. He helped to identify drug dealers in the area and worked closely with Detective Al Eastlack in the Narcotics Unit. Detective Eastlack spoke to Appellant once he returned home from the Poconos. Detective Samuel Wisniewski, who was investigating the arson and murder of Ms. Hibbs, also wished to speak to Appellant as a prime suspect, but Detective Eastlack stopped him from doing so because he did not want other officers interfering with Appellant's role as an informant. Detective Wisniewski complied with the request. No other leads were fruitful, and the investigation stalled for over twenty years.

In 2014, the case was reassigned to Detective Michael Slaughter of the Bristol Township Police Department. After unsuccessfully attempting to obtain and test DNA evidence, he interviewed Ms. Atkins. Although she and Appellant divorced in 2006, she continued to maintain that she did not have any information about the murder. The investigation once again halted until 2016, when Ms. Atkins reached out to Detective Slaughter to participate in a

recorded interview. She detailed the day of the murder where Appellant came home in blood-stained clothes and rushed his family to the Poconos. She also explained that Appellant always carried a three-inch-blade pocketknife, the total length of which measured six inches.

Despite this revelation, the investigation stood still until 2021. The case had been transferred to the Bucks County District Attorney's office, wherein Detective David Hanks discovered Ms. Atkins's 2016 interview. He thereafter obtained her consent to intercept phone calls and text messages between her and Appellant. In one of these conversations, Ms. Atkins told Appellant that officers spoke to her regarding the victim, and she sent a text with knife and fire emoticons. N.T. Trial, 1/29/24, at 39. Their daughter then conveyed to Ms. Atkins that Appellant was worried about being arrested, and that he began to prepare their son for life without him.

Appellant was arrested and charged with first degree murder, second degree murder, seven counts of arson, two counts of robbery, and one count of burglary. Following a preliminary hearing, the charges were held for court and Appellant was placed without bail in the Bucks County Correctional Facility. While there, he spoke to a fellow inmate about the day of the murder. When asked whether he committed the crime, Appellant nodded his head, which the inmate interpreted as an admission of guilt.

Appellant waived his right to a jury trial, and at the ensuing bench trial, the foregoing facts were established from various witnesses, including David,

Ms. Atkins, and various detectives. The court convicted Appellant of first-degree murder and two counts of arson, and imposed the aforementioned sentence.[2] Appellant thereafter filed a post-sentence motion, asserting that his convictions were against the weight of the evidence, which the court denied after a hearing. This timely appeal followed, and the trial court ordered Appellant to file a statement pursuant to Pa.R.A.P. 1925(b).[3] It then issued a responsive 1925(a) opinion. Appellant sets forth the following issues for our determination:

> 1.    Was there sufficient evidence to convict Appellant of murder in the first degree of [Ms.] Hibbs?
>
> 2.    Was there sufficient evidence to convict Appellant of arson — danger of death or serious bodily injury?
>
> 3.    Was there sufficient evidence to convict Appellant of arson — inhabited building or structure?
>
> 4.    Did the trial court commit an error of law by denying Appellant's motion for judgment of acquittal in this matter because the conviction was against the manifest weight of the evidence?
>
> 5.    Did the trial court incorrectly permit impermissible [Pa.R.E.] 404(b) evidence during trial, specifically the testimony of [Ms.] Mi[ckl]as that Appellant became angry with her during an argument about leaves, during which Appellant stated he would "kill her and blow up her house"?

---

[2] The court found Appellant not guilty of the remaining offenses.

[3] We remind the court that in its Rule 1925(b) order, it must state "both the place the appellant can serve the Statement in person and the address to which the appellant can mail the Statement. In addition, the judge may provide an email, facsimile, or other alternative means for the appellant to serve the Statement on the judge[.]" Pa.R.A.P. 1925(b)(3)(iii).

6.     Did the trial court incorrectly permit impermissible [Rule] 404(b) evidence during trial, specifically the testimony of [Ms.] Atkins that she suffered spousal abuse at the hands of her husband?

7.     Did the trial court incorrectly permit impermissible [Rule] 404(b) evidence during trial, specifically the testimony about Appellant's illicit drug use during times both relevant to the murder of [Ms.] Hibbs and irrelevant to the murder of [Ms.] Hibbs after ruling such evidence inadmissible at trial during pretrial motions?

8.     Did the trial court commit an error of law by incorrectly excluding certain relevant [Rule] 404(b) evidence, specifically evidence that [Ms.] Atkins was arrested [on] October 5, 2022?

9.     Did the trial court commit an error of law by incorrectly excluding certain relevant [Rule] 404(b) evidence, specifically evidence that [Ms.] Atkins had a pending criminal prosecution in Bucks County at the time of trial in this matter?

Appellant's brief at 11 (unnecessary capitalization and some articles omitted).

Appellant's first three issues purport to challenge the sufficiency of the evidence to sustain his convictions.  However, Appellant wholly fails to develop an argument in his brief in support of these claims.  Rule 2119(a) of our Rules of Appellate Procedure provides:

> The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part-- in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a).   Our Supreme Court has explained that when an appellant's "brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion

capable of review, that claim is waived. It is not the obligation of an appellate court to formulate [an] appellant's arguments for him." ***Commonwealth v. Armolt***, 294 A.3d 364, 377 (Pa. 2023).

Appellant's dedicated sufficiency section only contains various summaries of testimony without any citation to legal authority, and his assertions purport to challenge the weight, rather than the sufficiency, of the evidence.[4] ***See*** Appellant's brief at 16-23. Appellant has thus failed to develop an argument in support of any of his sufficiency issues. ***See Armolt***, 294 A.3d at 377. Accordingly, Appellant's first three matters are waived.

Appellant's fourth issue assails the weight of the evidence. His brief, however, has omitted a section devoted to this argument. Rather, as indicated *supra*, his purported sufficiency discussion actually sets forth issues concerning the weight of the evidence, as he claims that the Commonwealth's evidence was untrustworthy. ***See Commonwealth v. Juray***, 275 A.3d 1037, 1043 (Pa.Super. 2022) ("[A] sufficiency of the evidence review does not include an assessment of credibility of testimony offered by the Commonwealth. Instead, such arguments are more properly characterized as challenges to weight of evidence."). We shall nevertheless review Appellant's weight argument from what we can discern in his brief.

---

[4] For instance, after quoting a statement made by the trial court about the pitfalls of the investigation, Appellant states, without further analysis, "[h]ow can a trier of fact place any trust in an investigation born of these circumstances?" Appellant's brief at 22.

We begin with the pertinent law that guides our review:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Commonwealth v. Person**, 325 A.3d 823, 836 (Pa.Super. 2024).[5]

Appellant largely challenges the credibility of the testimony from the Commonwealth's witnesses. **See** Appellant's brief at 16-23. He avers that "police corruption, ego[,] and half-measures" inhibited the investigation, rendering it unreliable. **Id**. at 16, 21-22. Since there was no forensic evidence obtained in this case, he argues that the Commonwealth could not meet its burden. **Id**. at 18. Appellant also maintains that the only evidence that he owned a blue Monte Carlo came from "the grieving twelve-year-old memory of [the victim's] only son." **Id**. at 20. He lastly contends that Ms. Atkins was not a disinterested witness, claiming she had "both a reason and a motive to lie about [Appellant] being involved in the murder of [the victim]." **Id**. at 23.

_____

[5] While it may seem unusual to ask a trial court to conclude that its own finding is conscience-shocking, "this Court applies the same standard of review to weight claims regardless of whether the trial judge presided over a jury or non-jury trial." **Commonwealth v. Peters**, 276 A.3d 226, 2022 WL 704263 at *2 n.2 (Pa. Super. 2022) (non-precedential decision).

The trial court provided the following analysis on this issue:

The Commonwealth presented a plethora of evidence from a variety of witnesses. Each witness consistently testified to the same general facts outlined above: Appellant sold the victim marijuana on multiple occasions[;] there was a . . . dispute over the quality of the marijuana[;] Appellant had threatened to kill her and blow up her house[;] Appellant was identified as a suspect within hours of the autopsy results showing that the victim was murdered[;] the fire investigation concluded that there were multiple points of origin for the fire and that it was intentionally started[;] Appellant remained the prime suspect throughout the thirty[-]year history of this case[;] and Appellant owned the same make and model vehicle that was seen by several eyewitnesses outside the victim's home at the time of the murder.

Trial Court Opinion, 9/13/24, at 26 (some capitalization altered).

Upon review, the record confirms that the court did not abuse its discretion in concluding that Appellant's convictions were not against the weight of the evidence. Ms. Atkins attested that Appellant returned home the day of the murder covered in blood, and he hurriedly escaped with his family on an unplanned trip to the Poconos. The victim's son recounted that Appellant threatened to harm his mother after her complaint about the quality of marijuana he sold her, and Ms. Atkins confirmed that he always carried a six-inch pocketknife. The fire and murder matched Appellant's threat and his weapon, where the victim suffered stab wounds, the deepest of which being six inches, and her house was intentionally set on fire. We discern no abuse of discretion in the court's determination that Appellant is not entitled to a new trial.

Appellant's last five issues dispute the admissibility of certain testimony. Our review of a trial court's decision to admit evidence is for an abuse of discretion, which is found only where the court's decision is "a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." ***Commonwealth v. Carter***, 320 A.3d 140, 147 (Pa.Super. 2024).

Appellant's first three evidentiary issues are challenged under Rule 404(b) the Pennsylvania Rules of Evidence.[6]  That rule states:

> **(b) Other Crimes, Wrongs, or Acts**.
>
> *(1) Prohibited Uses*.  Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> *(2) Permitted Uses*.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404.  The Comment explains that it "contains a non-exhaustive list of purposes, other than proving character, for which a person's other crimes, wrongs, or acts may be admissible." Pa.R.E. 404, *Comment*.  One of the non-

---

[6] Although Appellant cites Rule 404(b) for all five issues in his statement of questions presented, he does not discuss that Rule in his argument for the final two claims.  As Appellant has failed to develop an argument, those issues are waived with respect to Rule 404(b).  ***See*** Pa.R.A.P. 2119(a); ***Armolt***, 294 A.3d at 377.

enumerated purposes recognized by Pennsylvania law is the *res gestae* exception, which "permit[s] the admission of evidence of other crimes or bad acts to tell the complete story." ***Commonwealth v. Carter***, 320 A.3d 140, 148 (Pa.Super. 2024) (cleaned up).

Although the probative value of the evidence must outweigh its prejudicial effect, "[t]he trial court is not required to sanitize the trial to eliminate all unpleasant facts . . . where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." ***Commonwealth v. Ganjeh***, 300 A.3d 1082, 1091 (Pa.Super. 2023). Unfair prejudice is defined as "a tendency to suggest [a] decision on an improper basis or to divert the [factfinder's] attention away from its duty of weighting the evidence impartially." ***Commonwealth v. Green***, 271 A.3d 393, 402 (Pa.Super. 2021).

Appellant argues that the following pieces of evidence violated the precepts of Rule 404(b): (1) Ms. Micklas's statement that Appellant threatened to "blow up her house and blow up her car"; (2) Ms. Atkins's testimony that Appellant abused her; and (3) evidence that Appellant used and sold illicit drugs.[7] ***See*** Appellant's brief at 24. He maintains that the

_____

[7] Appellant does not specify which witness attested that he sold and used drugs. The trial court assumed that this statement came from Ms. Atkins. ***See*** Trial Court Opinion, 9/13/24, at 17 (citing N.T. Trial, 1/30/24, at 21). As
*(Footnote Continued Next Page)*

statements from Ms. Micklas and Ms. Atkins were introduced to prove that Appellant "was generally a bad man with a temper" and that he was "capable of the murder of [the victim]." *Id*. at 25-26. Further, Appellant contends that he filed a pre-trial motion to exclude testimony concerning his illicit drug use, which the court granted. Appellant thus asserts that he "won his objection to evidence being admitted at trial concerning [his] drug use[,]" even though Ms. Atkins was permitted to testify to this effect. *Id*. at 27.

The court analyzed each of these statements for its intended purpose, as well as its probative value compared to the prejudicial effect, and concluded that each was properly introduced. First, it discussed that Appellant's threat to his neighbor was introduced to identify him where he asserted the same threat against the victim shortly before she was murdered. *See* Trial Court Opinion, 9/13/24, at 15. The court further asserted that Ms. Atkins's testimony that she suffered abuse at the hands of Appellant was admissible under the *res gestae* exception, as it provided an explanation for why Ms. Atkins did not come forward sooner with the information she knew about the murder. *Id*. at 16. The court also maintained that although it granted Appellant's pre-trial motion to exclude evidence about his drug use and trafficking, Appellant did not object to this testimony at trial, thus the issue

---

Appellant does not contest this assumption, we will also presume that Appellant is only challenging the testimony elicited from Ms. Atkins in that regard.

was waived. *Id*. at 17-18. Even so, the court stated that this testimony was elicited to demonstrate "Appellant's role as an informant[,]" and "explained the breakdown of the investigation and why attention was diverted away from Appellant as a potential suspect." *Id*. at 18.

The trial court did not abuse its discretion in admitting Ms. Micklas's statement about Appellant's threat and Ms. Atkins's testimony that Appellant abused her. These challenged pieces of evidence served purposes other than illustrating Appellant's propensity. Ms. Micklas's recitation of Appellant's threat to her, which was similar to the threat made to the victim before her death, identified Appellant. *See* Pa.R.E. 404(b)(2). Ms. Atkins's testimony that Appellant abused her also completed the story as to why she did not come forward with information about the murder for over twenty years. *See Commonwealth v. Page*, 965 A.2d 1212, 1221 (Pa.Super. 2009) (holding that "the victim's testimony about [the a]ppellant's physical abuse of her mother was not unduly prejudicial" where "[t]he reference was admitted to explain the victim's delay in reporting"). While "unpleasant[,]" these facts were not so unduly prejudicial as to require the court to exclude them where they elucidated "the history and natural development of the events and offenses for which [Appellant wa]s charged." *Ganjeh*, 300 A.3d at 1091.

We agree with Appellant's contention that the court granted his pre-trial motion to "preclude evidence of drug use[.]" Order, 11/15/23, at ¶ 12. Since Appellant's motion was granted, he did not need to renew his objection at

trial. *See Commonwealth v. McGriff*, 160 A.3d 863, 866 (Pa.Super. 2017) ("Consistent with Pa.R.E. 103(a), a motion *in limine* may preserve an objection for appeal without any need to renew the objection at trial, but only if the trial court clearly and definitively rules on the motion." (cleaned up)).

However, the court deferred its ruling as to evidence regarding Appellant's "drug trafficking" until trial. *See* Order, 11/15/23, at ¶ 13. The court did not clearly rule upon the motion, but permitted Ms. Atkins to testify, without objection, to Appellant's drug dealing as it related to his informant status. This attestation helped explain why the investigation stalled. *See Carter*, 320 A.3d at 148. Ms. Atkins's testimony about Appellant's drug use was also incidental to her statements about his drug trafficking, and did not have a significant enough impact on the trial to warrant relief. *See Commonwealth v. Taylor*, 209 A.3d 444, 450 (Pa.Super. 2019) ("Harmless error exists where the appellate court is convinced beyond a reasonable doubt that the erroneously admitted evidence could not have contributed to the verdict."). Moreover, "[t]his was a bench trial, and a trial court acting as the fact-finder is presumed to know the law, ignore prejudicial statements, and disregard inadmissible evidence." *Commonwealth v. McFadden*, 156 A.3d 299, 309 (Pa.Super. 2017) (cleaned up). Thus, Appellant is not entitled to relief.

Appellant's last two issues concern his unsuccessful attempt to introduce evidence of Ms. Atkins's arrest in 2022 for an offense not related to and

decades after the crimes herein, and her participation in an Accelerated Rehabilitative Disposition ("ARD") program at the time of trial for that offense.[8]    Crucially, "admission into an ARD program places the criminal proceeding in abeyance, so that a defendant may pursue rehabilitation without the necessity of trial and conviction, and successful completion of ARD is not equivalent to a conviction under any circumstance."    *Commonwealth v. McCabe*, 230 A.3d 1199, 1204 (Pa.Super. 2020).    Relatedly, this Court has held that "the veracity of a witness may not be impeached by prior arrests which have not led to convictions." *Commonwealth v. Velazquez*, 307 A.3d 87, 94 (Pa.Super. 2023).

Appellant states that Ms. Atkins's placement in an ARD program following her arrest was a "gift" that tended to show that she "received actual favorable treatment from the Commonwealth in exchange for her testimony against Appellant."    Appellant's brief at 29.    He maintains that "because the trial court refused to admit this evidence, neither o[f] these bias concerns could be explored by . . . Appellant." *Id*.

In its Rule 1925(a) opinion, the court explained that Ms. Atkins's arrest and subsequent entry into ARD were not admissible to demonstrate bias because she "contacted the Bristol Police Department to share the previously

---

[8] These issues are lumped together in the argument section of Appellant's brief.  We remind Appellant that "[t]he argument shall be divided into as many parts as there are questions to be argued[.]"  Pa.R.A.P. 2119(a).

withheld information more than five years prior to her October 2022 arrest that led to her own criminal matter." Trial Court Opinion, 9/13/24, at 19 (emphasis omitted). It noted that "Ms. Atkins testified twice . . . before her arrest occurred[,]" and that "[h]er testimony each time was consistent, and it remained unchanged after her arrest." ***Id***. Additionally, the court acknowledged that Ms. Atkins's arrest never led to a conviction, thus it was not admissible as impeachment evidence. ***Id***.

The trial court's reasoning is sound. Ms. Atkins's participation in an ARD program does not equate to a conviction. As it is well-settled that an arrest that does not lead to a conviction is not admissible to impeach a witness, the court correctly precluded its entry. ***See Velazquez***, 307 A.3d at 94. Ms. Atkins's arrest also did not relate to the present matter considering it happened five years after her recorded interview with Detective Slaughter. Further, she remained consistent in her testimony both before the arrest and during trial. This argument is therefore meritless.

As we discern no reason to grant relief to Appellant where the trial court did not abuse its discretion in concluding that the weight of the evidence supported his convictions, and in its decisions to admit or exclude certain evidence, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 4/21/2025